# Warren v. Liddell.

### Statutory Trial of the Right of Property.

1. *Trial of the right of property; what proper issue.*—On a trial of the right of property, levied on under judicial process, the only proper issue is whether the property belongs to the defendant and is subject to the process, and such issue is made up by the affirmation by the plaintiff that it is the property of the defendant and subject to the process, and a denial of that fact by the claimant; and it is not contemplated that the proceedings should be embarrassed by formal pleadings.

2. *Same; issue when claim interposed in detinue suit*—Under the provisions of the act approved February 26, 1889, (Acts 1888-89, p 57), that the same proceedings shall be had for the trial of the right of property seized in detinue suits, when it is claimed by one not a party to the suit, as in other trials of the right of property, the proper issue is the affirmation by the plaintiff in the detinue suit that the property levied on is subject to the process, and a denial of that fact by the claimant; and it is erroneous for the court to require the claimant to propound his claim so as to set out at length what particular right or title he may have to the property.

3. *Conditional sale; when contract held to constitute it.*—When, in the

[Warren v. Liddell.]

sale of personal property, which is delivered to the vendee and his note is taken for a part of the purchase price, it is expressly stipulated that "the condition of this contract is that the legal title and right of property in and to the above described property is to remain and be vested in [the vendor] until such notes and all accrued interest thereon are paid," and if the notes are not paid as stipulated, the vendor may take possession of the property, but if such notes are paid, the title shall vest in the vendee, such contract does not create a chattel mortgage or a bailment, but is a conditional sale, under which the title to the property does not pass from the vendor and vest in the vendee until the purchase price, as evidenced by said notes, is paid.

4. *Same; right of vendor to recover against innocent sub-purchaser.*— A purchaser of personal property from one in possession thereof under an incomplete conditional sale, acquires only the conditional title of his vendor, and can not defeat a recovery of such property by the original vendor, even though he shows that he was a *bona fide* purchaser for value and without notice.

5 *Same; title of vendor can not be defeated by attaching chattels to realty.*—Where the vendee of personal property under a conditional sale, without perfecting his title thereto by payment of the amount due, attaches the property so purchased to land which he had previously mortgaged, in such a way as to make it a part of the realty, but not in a manner to render it incapable of removal without detriment to the land, such annexation of the personalty to the land does not defeat or affect the rights of the conditional vendor; and the fact that thereafter, the conditional vendee, in payment of his mortgage debt, executed to the mortgagee a deed to the land, gives to the mortgagee and grantee in such deed, as against the conditional vendor, no higher or better right to said personal property than had the mortgagor who was the vendee in the conditional sale, and upon default of the latter in meeting the conditions of the sale, his vendor is entitled to recover the property, notwithstanding the execution and existence of such deed.

APPEAL from the Circuit Court of Montgomery.

Tried before the Hon. JOHN G. WINTER, Special Judge.

This was a statutory action of detinue, brought by the appellee, Forbes Liddell, doing business as Forbes Liddell & Co., against C. W. Chesson, in the circuit court of Macon county, to recover an engine, boiler, cotton press, gin, feeder and condenser, with the fixtures and appliances therewith connected for running the same. The action was transferred by consent to the circuit court of Montgomery county. The property sued for had been purchased by Chesson from the plaintiff in Montgomery, on the 28th of June, 1893. The contract of purchase

was in writing, duly executed by and between the parties. The terms of the contract as specified therein were, that the machinery was "to be delivered on the cars at Montgomery, Ala., for the consideration of the payment of twelve hundred and seventy-five dollars, six hundred and thirty-seven .50-100 dollars payable Dec. 1, 1893, six hundred and thirty-seven 50-100 dollars payable November 1st, 1894. First payment to be closed by accepted draft on W. I. R. Thompson. Last payment by note. Notes to bear date of bill of lading. Eight per cent. interest from August 1st, 1893. The condition of this contract is, that the legal title and right of property in and to the above described property is to remain and to be vested in Forbes Liddell & Co. until said notes and all interest thereon accrued are paid off; and in case the said C. W. Chesson should fail to pay off the amount due by said notes at maturity, or either of them, then and in that event, all of said notes remaining unpaid shall be and are hereby agreed and considered to be due; and it shall be lawful for Forbes Liddell & Co. to take possession of said property above described, at any time after the maturity of said notes which remain unpaid, or may sue, if they see proper, upon all of said notes, as though they were all due, and this agreement shall be their authority for so doing; and all payments, on notes and otherwise, previous to the default in payment of any of said notes, shall be, and are hereby considered to be, in payment for the use and occupation of said machinery. And the said C. W. Chesson forfeits all rights to all previous payments, should he fail to pay any of said notes at maturity; but in case said notes are paid off, then the title to said property to vest in said C. W. Chesson." This contract was never recorded in the probate office of Macon county, or elsewhere.

The evidence showed that the machinery was delivered by plaintiff to defendant in the city of Montgomery, but he did not know where it was to be erected, had never seen it since it left Montgomery, and did not know how it was attached to the land, but he knew when he sold it, that it was to be erected and used for the purposes for which it was sold. It was billed to be shipped to Chesson, Alabama. It further appears, that the second purchase money note was given as provided in the

contract, but no part of it had ever been paid, and was still due and unpaid.

It was shown that the machinery had been carried to Chesson Station in Macon county, and there erected for use, and was operated by said Chesson on land he owned and which he had mortgaged to the claimants, Warren & Co. The manner of its erection, how placed on and affixed to the soil was also shown, and was in such manner, as claimed by the claimants, as would make it fixtures to he soil.

Warren & Co., not parties to the detinue suit, instituted a claim under section 2717 of the Code, after the property had been seized by the sheriff in the detinue suit, and claimed the same as their property, and complied with the provisions of the act of February 26, 1889 (Acts 1888-89, p.57), for the trial of the right of property and the property was thereupon delivered to them by the sheriff.

It was admitted on the trial, "that prior to and before the machinery in controversy was purchased and placed upon the lands, the claimants (Warren & Co.) held a mortgage upon the lands, on which the said machinery was erected, duly executed by C. W. Chesson (who was the owner of the land) and recorded in the proper office, for a debt then running to maturity. That afterwards, and before the commencement of this suit, the claimants, in consideration of the said mortgage debt, received and took from the said Chesson a deed to the land, in due form, in satisfaction and foreclosure of the mortgage; * * * * that the deed to the land was given only in foreclosure of the mortgage, no money paid beyond the satisfaction of the mortgage." It was admitted by counsel as a fact, that the purchase was made only in foreclosure and satisfaction of the mortgage debt, and that there was no foreclosure proceedings under the mortgage other than the deed to the land, which was made in consideration and satisfaction of the mortgage debt. It further appears, that Chesson was in possession of the land and machinery under rental from, and as the tenant of, the claimants, Warren & Co., when plaintiff instituted suit. The other facts of the case are sufficiently stated in the opinion.

Upon the introduction of all the evidence, the court, at the request of the plaintiff, gave the general affirma-

tive charge in his favor, and refused the general affirmative charge requested by the claimants. To each of these rulings the claimants separately excepted. The claimants appeal from the judgment in favor of the plaintiff; and assigns as error the several rulings of the trial court to which exceptions were reserved.

W. A. GUNTER, for appellant.—The first mistake of the trial judge in this case was his order repealing the statute and overruling the decisions of this court in reference to the issue and burden of proof. The statute says, in cases like this, "the same proceedings must be had as in other trials of the right of property."—Acts 1888-89, pp. 57-8. The Code says that in such cases, an issue must be made up in which the plaintiff "must allege that the property claimed is the property" of the plaintiff and liable to the exigency of the writ; and that the burden of proof is on the plaintiff.—Code, § § 3005, 3007. The decisions are that "the only proper issue is an affirmation by the plaintiff in the process, that the property levied on is subject to the process, and a denial of that fact by the claimant."—3 Brick. Dig., 778, § 32; *Lehman v. Warren*, 53 Ala. 535; *Shahan v. Herzberg*, 73 Ala. 59; *Starnes v. Allen*, 58 Ala. 316.

The question under the facts is, whether the mortgagees and vendees, Warren & Co., are concluded and bound by the agreement between the vendor, Liddell, and the vendee, Chesson, (the latter being the mortgagor), that the machinery attached to and incorporated in the soil with the knowledge and consent of the vendor, should remain personal property? The idea is preposterous. The mortgagee is entitled to his land *usque ad coelum*, and holds the fixtures.—*Meagher v. Hayes* 152 Mass. 228; *Galveston v. Cowdrey*, 11 Wall. 482; *U. S. v. N. O. R R. Co.*, 12 Wall. 365; *Southbridge Sav. B. v. Exeter*, 127 Mass. 542; 1 Jones on Mort., §§ 444-5-6-7; *Elwes v. Mawe*, 2 Smith's Lead. Cas., 243; *McFadden v. Allen*, 134 N. Y. 489; *Bartholomew v. Hamilton*, 105 Mass. 239; *Ridgeway Stove Co. v. Way*, 6 N. E. Rep. 714; *Langstone v. State*, 96 Ala. 47; *Merchant's Bank v. Stanton*, 43 Amer. St. Rep. 498; *Jones v. N. O. & S. R R. Co.*, 70 Ala. 227; *Webber v. Ramsey*, 43 Amer. St. Rep. 433; *Tillman v. DeLacy*, 80 Ala. 103.

The claimants, Warren & Co., were moreover *bona*

*fide* purchasers for value without notice; they satisfied their mortgage debt in consideration of the land—they then held the legal title as mortgagees, and acquired the complete equity by the last transaction.—*Ridgeway v. Wry*, 6 N. E. Rep. 714; *Brennan v. Whitaker*, 15 Ohio St. Rep. 446; *Wentworth v. Wood M. Co.*, 39 N. E. Rep. 414. Notice to Warren & Co. was negatively disproved. But the burden of showing notice was on the plaintiff.—*Carroll v. Malone*, 28 Ala. 521; *Grier v. Campbell*, 21 Ala. 333; *Crafts v. Dexter*, 8 Ala. 767.

There is no denial of the fact that the manner and purpose of the attachment of the property to the realty was such as to constitute it a permanent accession to the land under any theory of fixtures. It could not be utilized without being attached as it was attached to and built into and on solid brick foundation let into the soil. It was in a house built for it, and suitable only for such machinery. It was operated as a unit. It was erected by the owner of the soil as against all the world except the mortgagee. The property in question, then, was part of the realty according to all the authorities.—*Tillman v. DeLacy*, 80 Ala. 103.

Finally, the contract between the appellee and Chesson was a sale, and the reservation of title was by way of security merely, and was thus a mortgage, and unavailing because not recorded as required by law. If an absolute debt, by agreement, representing the price of goods, is created in favor of a vendor, and is paid in part or secured, and the goods are delivered to the vendee, it is obvious that the risk of the property is with the vendee, and that a sale has been consummated between the parties. And it is quite obvious that "neither the intention of the parties nor their express contracts can change the essential nature of things." If the parties to such a contract add any other feature by way of security for payment of the price, it is beyond doubt that there is still a sale with the superadded term, which must operate according to its "essential nature." If it operates on the same or other property specifically, its essential nature is that of a pledge or mortgage, legal or equitable, as the case may be. A conveyance or retention of title to secure a debt is a mortgage, "and the stipulation of the parties can not make it otherwise."—*Turner v. Kerr*, 44 Mo. 429; *Hart v. Barney*, 7 Fed. Rep. 543; 1 Benj. on

[Warren v. Liddell.]

Sales, 6 Amer. ed. (Corbin) 9. To style such a contract otherwise than according to its essential nature, is, as is said by the Supreme Court of the United States, "a mere subterfuge."—*Harvey v. R. I. I. Works*, 93 U.S.664.

But the case in 67 Ala. 109, runs counter to all such ideas, for it holds that the price may be fixed and paid to any extent less than the whole, and the balance secured in any way, and the possession delivered to the vendee, and yet that the mere reservation of "claim on or title to" the property, "until it is paid for," does not operate as a mortgage but as a "conditional sale," and that a purchaser without notice acquires no title against the vendor. The reasoning of this case is as faulty as the conclusion reached. We refer to the opinion of Mr. Justice MANNING in *Dudley v. Abner*, 52 Ala 572, as being entirely conclusive to the point that such a transaction is a sale in all its features, as the term is defined by BRICKELL, C. J., in *McCall v. Powell*, 64 Ala. 258, and that the supplemental clause is in the nature of a mortgage. Judge MANNING cites the cases to show that his holding was founded on previous decisions of this court. And the same ruling was subsequently approved in *McCall v. Powell*, 64 Ala. 254, and *Leigh v. M. & O. R. R. Co.*, 58 Ala. 177. The reasoning in these two cases, and particularly in the last, on pages 176-7, is a complete vindication of *Dudley v. Abner*. They hold that if no sale has been made, but only a delivery of possession with the right to make a purchase, the sale is conditional and not operative till made; but that if actually made and title is reserved to secure the purchase-money, it is a mortgage. And this conforms to reason, and is in no wise answered by *Fairbanks v. Eureka*, 67 Ala. 109. This court in *Dowdell v. Empire Fur. & L. Co.*, 84 Ala. 316, expressly reaffirms the principle insisted on, that if the legal effect of the transaction is to secure the price, it operates as a chattel mortgage, approving the case of *Heryford v. Davis*, 102 U. S. 235, and *Hart v. Barney*, 7 Fed. Rep. 543, which support the reasoning in *Leigh v. M. & O. R. R. Co.*, 58 Ala. 176, and Judge MANNING in *Dudley v. Abner*, 52 Ala. 572.

THOS. G. & CHAS. P. JONES and EDWIN F. JONES, *contra*.—The evidence being undisputed as to the contract under which this property was obtained from Lid-

dell, his rights are fixed by that contract. It then became a clear question of law for the court to determine the rights of the parties to that contract. This would be undoubtedly true, if the test was between Chesson and Liddell; and is so necessarily between Liddell and third parties, unless Liddell, by some act in the transaction has estopped himself from asserting his rights under the contract. Under our decisions in the 67 Ala. 109, and the same volume, 139, this contract was clearly a conditional sale, and passed no title to the vendee. Appellant recognizes the conclusiveness of these decisions, and expressly asks the court to overrule them. In these cases, it is distinctly held that the price may be fixed and partly paid, and the possession delivered to the vendee, yet if there is a reservation of title to the property, until it is paid, such contract, is not a mortgage, but a conditional sale, and the purchaser without notice, acquired no title against the vendor. By the express terms of the contract, it is made a condition of this contract that the legal title and right of property to the machinery sold is to remain and be vested in Forbes Liddell, and that all prior payments shall be treated as rent for the use of the machinery. It would be difficult to imagine plainer language for the purpose of making a conditional sale. If the contract was a conditional sale, then, under our decisions it is clear that no rights of Liddell to the property could be prejudiced by the act of any one except himself; and that the mere delivery of possession to the vendee is not such an act as would affect Liddell's rights.—*Miller v. Griffin*, 102 Ala. 610; *Montgomery I. Works v. Smith*, 98 Ala. 644; *Wood v. Holly Manfg. Co.*, 100 Ala. 351; *Jones v. S. & N. O. R. R. Co.*, 70 Ala. 227. The case of *Sisson v. Hibbard*, 75 N. Y. 542, is nearly on all-fours with this case.—*Baldwin v. Young*, 17 So. Rep. 883; *Tifft v. Horton*, 53 N. Y. 377.

The general doctrine is that the vendee under a conditional sale, can not confer title by the sale and transfer of the property even to a *bona fide* purchaser in good faith, and without notice of the original vendor's claim to the property.—3 Amer. & Eng. Encyc. of Law, 436 and n. 2. Appellant bases his right of recovery on the doctrine that he owns the soil and owns everything up to the heavens, and while no one will dispute the correctness of this maxim, as to the law, we insist that

it has no applicability to the facts in this case. Claimant rests his right as the owner of the soil upon the mortgage which Chesson had executed to him, and which was not due at the time of the sale by Liddell, and claims that the mortgage attached to the property as soon as it was affixed to the mortgaged premises. This doctrine has been expressly denied in many cases, and it has always been held, except by the Massachusetts courts, that the title acquired by the mortgagee was subject to all the infirmities, and liable to all the burdens which rested on it in the hands of the mortgagor.—*Williamson v. N. J. So. R. R. Co*, 28 N. J. Eq. 277; s. c. 29 N. J. Eq. 311. The case of *Haven v. Emory*, 33 N. H. 66, is an express authority that as to property purchased under a conditional sale, a mortgage attaches to it subject to such condition.—*Taylor v. Burlington*, 11 Western Jur. 337; *Chrisp v. Miller*, 5 Heiskell, 697; *Polk v. Foster*, 7 Baxter (Tenn.) 98; *Fosdick v. Schall*, 99 U. S. 251; *U.S. v. N. O. R. R. Co.*, 12 Wall. 365.

All that Warren acquired by his deed from Chesson was a mere equity to redeem, a mere right in Chesson to redeem the property by a payment of the debt due to Warren, and it is idle to claim that a transfer of such a mere equity could carry with it the rights of a third party to the personal property, or obliterate the conditions under which Chesson acquired possession of such property. The evidence shows that Warren knew at the time he took said deed that the claim of Thompson was the purchase of machinery by Chesson. It is thus clearly shown that Warren was in possession of facts, which if followed would have disclosed to him the interest of Liddell, and given him full knowledge of the conditions of the trade between him and Chesson if he had investigated. He can not sit by and refuse to investigate, and then claim to be a *bona fide* purchaser.—*Rosette v. Wynn*, 73 Ala. 146; *Taylor v. A. & M. Asso.*, 68 Ala. 229; *Craft v. Russell*, 67 Ala. 9.

HARALSON, J.—1. On the trial, an issue was made up by the plaintiff, by alleging in writing that the property sued for, and for which a claim was interposed by claimants, was the property of the plaintiff, and liable to seizure under the writ of detinue in the case. To this issue thus tendered, the claimants filed a written

joinder, on the same sheet of paper, as follows: "Come the claimants and take issue upon the allegations of the foregoing." When the trial had progressed for some time, on motion of the plaintiff, and against the objection of claimants, the court required the claimants, "to propound their claim so as to set out what particular right or title they had to the property more fully, holding that the issue joined by the claimants on the allegations of the plaintiff was insufficient, and not a compliance with the law." The claimants complied, setting out their claim fully as it was brought out in the evidence, and excepted to the ruling of the court requiring them to do so.

In *Lehman, Durr & Co. v. Warren,* 53 Ala. 535, the court held, that on a trial of the right of property, the only proper issue is an affirmation by the plaintiff in the process, that the property levied on is subject to the process, and a denial of that fact by claimant. The form of issue on the contest, as was afterwards held, is largely within the discretion of the court, is not subject to demurrer, nor governed by the rules of pleading; and if broad enough to admit any legal evidence as to the validity or invalidity of the claim, in whole or in part, on grounds specified in the affidavit of contest, it is substantially sufficient.—*Shahan v. Herzberg,* 73 Ala. 59. As was said in the case in 53 Alabama, it was never intended that the proceeding should be embarrassed by formal pleadings, which tend to confuse and mar their simplicity. It was added: "The affidavit serves its purpose, when with a proper bond by the claimant, it arrests the action of the officer, and introduces the claim into court, as a pending suit. Its statements can neither enlarge nor narrow the issue, which the statute requires to be made up, and it is not probably required for any other reason than as an affirmation of the good faith of the claimant in instituting the proceeding." If such pleadings are introduced, the trial may be had as if the issue had been in conformity with the statute.

The act of February 26th, 1889 (Acts 1888–89, p. 57) provides, that the same proceedings shall be had for the trial of the right of property seized in detinue suits, when claimed by one not a party to the suit, as in other trials of the right of property. The issue tendered by the plaintiff in this case was such as is usual in such

[Warren v. Liddell.]

cases, and all that the law required.  The claimants
joined the issue tendered, and the demand of the plain-
tiff thereafter, and the order of the court, that they
should, in joining issue, go into the details of the evi-
dence of their claim, as they expected to establish it,
was more than the law required, and was not in con-
formity with the well understood rules of practice in
such cases.  This was done for the further satisfaction
of plaintiff's counsel, in discharging the burden on
plaintiff to establish his title to the property levied on.
The claimants might, for as good reasons, have demand-
ed that he should have presented an issue with a de-
tailed statement of the evidence on which he relied to
make out his case.  It is well in such cases, to adhere
to the statutory requirements in making up such an
issue.

But, the court by this order, did not change the bur-
den of proof.  It was still on plaintiff.  Nor does it
appear, that the claimants were trammelled in the pros-
ecution of their claim by this requirement of the court.
They made all the proof, or were entitled to do so, as if
this requirement had not been made of them, and no
possible injury resulted to them therefrom.  So, it was,
at most, error without injury.

2.  The rights of the seller, Forbes Liddell & Co., and
of the purchaser of the machinery, Chesson, are fixed
by the contract between them, and it is, therefore, a
matter of law for the court, in the construction of the
instrument, to determine their rights thereunder.  It is
contended by the plaintiff, that the transaction was a
conditional sale, with no title vested in or acquired by
the vendee to the property sold, but with the title re-
maining in the vendor until the conditions of the sale
were fully complied with ; and, on the part of the claim-
ants, that the contract between the parties was a sale,
"and the reservation of title was by way of security
merely, and was thus a mortgage, unavailing because
not recorded as required by law."  The claimants seemed
to rely on this as an indispensable point to be made good
in establishing their claim.

But this position as to the character of this in-
strument is utterly untenable, and can not be sustained
unless we were to hold that there is no such thing in
the law as a conditional sale.  The language of the bill

of sale could not be made plainer or more effectual to create a conditional sale. It is: "The condition of this contract is, that the legal title and right of property in and to the above described property is to remain and to be vested in Forbes Liddell & Co., until said notes and all interest thereon accrued, are paid off," and if the notes are not paid as stipulated, it is added—to make the intention of the parties clearer, if possible— "then it shall be lawful for Forbes Liddell & Co. to take possession of said property at any time after the maturity of said notes; * * * * but in case said notes are paid off, then the title to the said property is to vest in said C. W. Chesson." If he failed to pay at maturity, it provided, that "all payments on notes or otherwise, previous to default in payment of any of said notes, shall be and are hereby considered to be in payment for the use and occupation of said machinery. And the said C. W. Chesson forfeits all rights to all previous payments, should he fail to pay any of said notes at maturity." This language places the fact beyond all dispute, that as between the seller and purchaser, the transaction was executory; that the title was reserved to the seller, and it was never to become an executed sale, with title vested in the purchaser, until the purchase price therefor had been fully paid—a provision, with which the idea of a security for a debt is utterly incompatible.—*Hainey v. Robertson*, 58 Ala. 39 ; *Dowdell v. Empire Fur. & Lumber Co.*, 84 Ala. 316. Not only so, but as between the vendor and vendee, the agreement implies, as plainly as if it had been written in the contract, that the purchaser could do nothing with the property, in any use he might make of it, to defeat the plaintiff's title. He could not rightfully affix it to the soil, or make any disposition of it, which would impair plaintiff's right to it, in case the contract was not fully performed by him. Between them, it was tantamount to an agreement that the machinery wherever located, to be used for the purposes for which it was adapted, should not be so affixed to the soil, that plaintiff might not,—in case it became necessary in the assertion of his right,—tear it down and take it away. All this is true, as between Chesson and Liddell, and is necessarily so between Liddell and the claimants, unless Liddell by some act in the transaction,

has estopped himself from asserting his rights under the contract.

3. Recognizing this to be true, the claimants find it necessary, by counsel, to assail our descisions in recognition of the princple, and ask that they be overruled, as contrary to principle and authority. In *Dudley v. Abner*, 52 Ala. 572, and *Summer v. Wood, Ib.* 94, this court, departing from its former rulings, held that where one holds personal property under a conditional sale—such in substance and effect as the one now before us, with the title reserved in the vendor until the conditions for payment were complied with—the transaction, while a conditional sale, was void against *bona fide* purchasers, without reference to the registration laws. In *Fairbanks v. The Eureka Co.*, 67 Ala. 109, and *Sumner v. Wood, Ib.* 139, the 52 Ala. decisions came under review, were adjudged to be erroneous and expressly overruled. The court said, in the last case cited : "We consider it settled by an overwhelming preponderance of decisions, that when there is an express stipulation in the sale of personal property, that that property shall not be the vendee's until the price is paid, the title does not pass, the transaction being a mere conditional sale ; and that a *bona fide* purchaser of such property acquires only the conditional title of his vendor, and cannot be protected against recovery on suit brought by the original vendor and owner of the legal title. The fact that the purchaser or second vendor was, at the time of sale, in possession of the property, does not change the princ ple. It is a question of right and not of notice, and the maxim *caveat emptor* applies with as much force as in cases of ordinary bailments." In the case first cited, the subject is more exhaustively treated on review of the authorities, and the conclusions announced, that the record of a written contract for the conditional sale of personal property, in the office of the judge of probate, is unauthorized by statute and is not notice to a sub-purchaser, of the claim of the original vendor ; that the possession of personal property is only *prima facie* evidence of title, and cannot be relied on as higher evidence to divest the true owner of the title to his property, and that a purchaser of such property from one who holds possession under an incomplete conditional sale, cannot defeat a recovery by the original vendor, although he is a *bona fide*

purchaser for value and without notice. The court cited
with approval the leading case of *Forbes v. Marsh*, 15
Conn. 384, in which many decisions, English and Amer-
ican, are reviewed, and the Chief Justice WILLIAMS, de-
livering the opinion, said: ''The rule of law making the
property of one man liable for the debts of others in
whose hands it is found, is applicable particularly to that
property which was once owned by the purchaser, and
is by him sold and mortgaged to another, and then suf-
fered to remain in his possession. In such cases, pos-
session is evidence of fraud, because there is not given
to the world the usual evidence of the change of title.
The vendor or mortgagor is, therefore, presumed to re-
main owner of the property, as theretofore. It is other-
wise in cases like that before us. The vendee comes into
possession of property which was known to belong to an-
other man. Whether, therefore, the vendee had bor-
rowed it, or hired it, or purchased it, becomes a matter
of inquiry, and ought to be ascertained by him who pro-
poses to trust his property upon the faith of this appear-
ance; for the law offers its protecting shield to those who
propose to protect themselves. Accordingly, we find,
that all these cases of conditional sales made *bona fide*
have been held to be good as against attaching creditors,
as well as against other parties.''

In the case of *Harkness v. Russell*, 118 U. S. 663, Jus-
tice BRADLEY delivering the opinion, on review of the
American and common law authorities on the subject,
announces the same conclusions as the ones reached in
the Alabama cases referred to. It is safe to say, that
this rule prevails in this country with the exception of
two or three States, where a different doctrine is estab-
lished, dependent, perhaps, upon statutes. See 23 Am.
& Eng. Encyc. of Law, 435, 436, n. 1 for authorities;
Miller on Cond. Sales, § 40, and notes; and other text
books on Sales.

The cases of *Sumner v. Wood* and *Fairbanks v. Eureka
Co.* have been many times, since their delivery, referred
to and approved by us, and there is every reason to ad-
here to and none to depart from them.—*Medlin v. Wil-
kerson*, 81 Ala. 147; *Harmon v. Goetter, Weil & Co.*, 87
Ala. 327; *Stone v. Waite*, 88 Ala. 604; *Tanner v. Hall*, 89
Ala. 630; *Bouldin v. Estey Organ Co.*, 92 Ala. 182; *Wein-
stein v. Freyer*, 93 Ala. 259; *Bingham v. Vandergrift*, 93

Ala. 284; *Montgomery Iron Works v. Smith*, 98 Ala. 644.

4. It was shown in proof, that the machinery was purchased by Chesson from Liddell in Montgomery, to be shipped to Chesson Station in Macon county, and it was delivered to the purchaser in Montgomery, but the vendor did not know where it was to be erected and operated; had never seen it since it left Montgomery, and that no part of the last note given by Chesson for the property, as described in the contract, had been paid, but was due and owing to plaintiff. It was admitted on the trial, "that prior to and before the machinery in controversy was purchased and placed upon the lands, the claimants, Warren & Co., held a mortgage upon the lands on which said machinery was erected, [which mortgage had been] duly executed by C. W. Chesson, [who was the owner of the land], and recorded in the proper office, for a debt then running to maturity; that afterwards, and before the commencement of this suit, the claimants, in consideration of the said mortgage debt, received and took from the said Chesson, a deed to the land in due form, in satisfaction and foreclosure of the mortgage; * * that the deed to the land was given only in foreclosure of the mortgage—no money paid beyond the satisfaction of the mortgage;" and that there had been no foreclosure proceedings under the mortgage, other than a deed to the land. According to the contract, the first half payment for the machinery was by draft of Chesson on, and accepted by, W. I. R. Thompson.

The question arises, whether under the facts stated, this machinery, which, erected in such manner as machinery of this kind is generally put up on land to operate it, and in a manner, as contended, to make it fixtures, became the property of claimants under their purchase from Chesson, notwithstanding he had no title to it, and the plaintiff did have the title.

5. How far the doctrine of fixtures may be carried to override the title of a conditional vendor, or of a chattel mortgagee, has received much consideration. In the case of *Porter v. Pittsburg Bessemer Steel Co.*, 122 U. S. 267, it was said: "Whatever is the rule applicable to locomotives and cars and loose property susceptible of separate ownership and of separate liens, and to real estate not used for railroad purposes, as to their being unaffected

[Warren v. Liddell.]

by a prior mortgage given by a railroad company, covering after acquired property, it is well settled, in the decisions of this court, that rails and other articles which become affixed to and a part of a railroad covered by a prior mortgage, will be held by the lien of such mortgage in favor of *bona fide* creditors, as against any contract between the furnisher of the property and the railroad company containing stipulations like those in the present contract;" that the title to the property shall not pass till the property is paid for, and reserving the right of the vendor to remove the property. Whether or not we would sanction the doctrine in its fullest extent as here decided, in a case of the same kind, it is unnecessary for us now to decide. The purposes of the case with which we deal do not require us to do so. It may be well to add in this connection, that the Federal court has frequently decided, that a mortgage by a railroad company intended to cover after acquired property, "can only attach itself to such property in the condition in which it comes into the mortgagor's hands, and if that property is already subject to mortgage or other liens, the general mortgage does not displace them, though they may be junior to it in point of time. It only attaches to such interest as the mortgagor acquires,　　*　　*　　*　　and no general lien impending over him, whether in the shape of a general mortgage, or judgment, or recognizance can displace such mortgage. And in such case, a failure to register the mortgage for purchase money makes no difference, as it does not come within the reason of the registry laws, intended for the protection of subsequent, not prior, purchasers and creditors."—*United States v. New Orleans Railroad*, 12 Wall. 362; *Fosdick v. Schall*, 99 U. S. 251; *Meyer v. Johnston*, 53 Ala. 240. And again, the same court hold, that "The rules respecting a purchaser without notice are framed for the protection of him who purchases a legal estate and pays the purchase money without knowledge of an outstanding equity. They do not protect a person who acquires no semblance of title. Even the purchaser of an equity is bound to take notice of a prior equity."—*Vattier v. Hinde*, 7 Pet. 271; *Williamson v. So. R. Co.*, 28 N. J. Eq. 278; *Shorter v. Frazer*, 64 Ala. 81; *Wood v. Holly Manufacturing Co.*, 100 Ala. 351.

6. It will be observed, that the doctrine of the United

States Court touching personal property which has become fixtures in a railroad, is limited to property that has been incorporated into the railroad as fixtures, not susceptible of removal without injury to and destruction of the road, in whole or in part, and not to property which is susceptible of separate ownership and of separate liens, capable of being removed without such results. Accordingly we find them holding in the case of *Harkness. v. Russell*, 118 U. S. 663, *supra*,—a case of conditional sale of two steam engines, boilers and a portable sawmill connected with each engine,—that the vendee of the original vendee did not acquire title, but that the property was subject to the original vendor's title.

In the very carefully considered case to which reference has been made,—*Campbell v. Roddy*, 44 N. J. Eq. 244; s. c. 6 Am. St. Rep. 889,—the New Jersey court make elaborate discussion of this subject. They say: "As between a lienor who consents to have the subject-matter of his lien transmuted into a shape by which subsequent purchasers and mortgagees are liable to be subjected to deceptive dealings, there seems to be no equitable ground upon which the lien should be recognized against an innocent subsequent mortgagee or purchaser for value. * * * * But, as already observed, the real estate mortgagees in the present case, held their lien before the attachment to the realty of the mortgage chattels. It is true, that by force of the annexation they would become subjected to the lien of the real estate mortgage absolutely, unless the lien of the chattel mortgage intervenes. Any property belonging to the mortgagor which he chooses to annex to the mortgaged premises becomes realty. But it is difficult to perceive any equitable ground upon which the property of another which the mortgagor annexes to the mortgaged premises, should inure to the benefit of a prior mortgagee of the realty. * * * So long as he is secured in the full amount of the indemnity which he took, he has no ground of complaint. There is, therefore, no equity towards the prior real estate mortgagee, and there is equity toward the mortgagee of the chattels in protecting the lien of the latter, to its full extent, so far as it will not diminish the original security of the former. * * * The property of the mortgagor in these chattels, when he made the annexation, was an equity of redemption.

[Warren v. Liddell.]

So far as this interest had a value, it became subjected
to the lien of the prior real estate mortgagee, but the
value of his interest was the value of the property sub-
jected to the lien.'' Proceeding to discuss the doctrine
of fixtures, the court referred to the cases and rule of the
Federal court to which reference has been made, as to
property afterwards acquired by a company already
under mortgage, and said : ''It is true that in the opin-
ions in these cases, there is a statement that the rule
would be different if the articles upon which the lien
existed became incorporated into the road itself.    Instan-
ces may be imagined where the exception so indicated
would be proper.   Where the articles are of such a char-
acter, that their detachment would involve the dismant-
ling of an important feature of the realty, their annexa-
tion might well be regarded as an abandonment of the
lien by him who impliedly assented to the annexation.
Shingles, lumber, brick, to be used in a building, rail-
road iron or ties to be used in constructing a railroad
are apparent samples of such a class of chattels.   I am
not prepared to say, however, that even in such instances
there may not be an equitable method of awarding to a
prior mortgagee of the realty all his rights, while preserv-
ing, in some degree, the lienor of the chattels.   For, in
my view, the equitable way of dealing with the property
is to preserve the right of the prior real estate mortgagee
to the same degree of security which he would have en-
joyed had the property remained as when mort-
gaged.      *       *       *       *       *       *       *
''In the practical application of the equitable rule,
that the lien on the chattels must give way to the pre-
vious lien on the real property in the degree already in-
dicated, (and as held by the Federal court), there is no
difficulty when the annexed chattels, as in the present
case, are a distinguishable and separate part of the
realty.   If the detachment of the articles so annexed will
occasion no damage to the realty, then the lien upon
them can be enforced in the same degree as if they had
remained chattels.   If the detachment would occasion
some diminution in the value of the freehold, as it
would have stood had the attachment not been made,
then the depreciation must first be made whole to the
real estate mortgagee, before the right of the chattel mort-
gagee can be recognized.   So far as appears in the

present case, there can be no appreciable injury to the realty occasioned by the removal of the engines and chattels." To the same effect, in an action of replevin, see *Defiance M. Works v. Traisler*, 21 Mo. App. 69 ; *Baldwin v. Young*, (La.) 17 So. Rep. 883 ; *Sissons v. Hibbard*, 75 N. Y. 542. And in this State, we have held, that where a mortgage upon a chattel is given the mortgagor can not, by annexing or attaching such property to land, defeat the mortgage lien.—*Miller v. Griffin*, 102 Ala. 611 ; *Thomason v. Lewis*, 103 Ala. 427.

In the case from which we have just quoted, a part of the chattels, which consisted of a large lot of machinery and other chattels, was so annexed to the mortgaged real estate, that they became, as is stated, a part of the mortgaged premises. It will be observed, too, that the interest of the vendor was under a chattel mortgage, and the case is not one where there was a conditional sale, with no title in the vendee, but with title reserved in the vendor, as is the case we are trying. If a mortgagee of such chattels may remove them, much more so, may a conditional vendor, from whom the title has never departed. In the latter instance, under our decisions, the conditional vendee can convey no title by sale, and the property may be reclaimed, in the hands of the vendee's innocent vendee, by the original vendor.

The proof showed in this case, that the plaintiff's property was placed on the land without any agreement that he would waive any right in or to it, on account of its being so affixed, and without his knowledge or information that it was going to be placed on the land subject to claimant's mortgage, and that it could be removed without hurt to the real estate.

7. It is unnecessary to prosecute the inquiry as to whether claimants were *bona fide* purchasers of the machinery ; for, whether they were or not, Chesson having placed the machinery, to which plaintiff held a legal title, without any agreement by plaintiff for him to do so, on land he had mortgaged to claimants, and the property having not been affixed to the soil so as to render it incapable of removal without detriment to the land, claimants acquired, as against plaintiff, no higher or better right to the property, than Chesson had, and plaintiffs were clearly entitled to recover in the case. The general charge was rightly given for plaintiff.

There are adjudications to be found, holding views contrary to the conclusions we have here announced. Some of them may be found in the overruled 52 Ala. cases ; but it is safe to say, that they are comparatively few in number, and are opposed to the great weight of authority.

8. There was evidence tending to show that claimants, before they purchased Chesson's equity of redemption in the land, were informed of plaintiff's claim, or had such information, as if followed up by proper inquiries, would have disclosed his claim. But, it is unnecessary to consider that question, or the others on the exclusion of evidence.

Affirmed.