# McKenzie v. Stewart, et al.

### Bill for Specific Performance and to Satisfy Record.

(Decided May 18, 1916.  72 South. 109.)

1. **Mortgages; Payment; Agreement to Accept Specific Property.**— Where, for a valuable consideration, a mortgagee agrees to accept shares of stock in payment of the mortgage debt, a seasonable tender of such shares of stock is equivalent to a tender of the money due.

2. **Frauds; Statute; Agreement to Accept Shares of Stock.**—An agreement between a mortgagor and a mortgagee that upon the sale of the mortgaged property, the mortgagee will accept in payment of the debt shares of stock which are to be received by the mortgagor in payment of the purchase price of the land, is not within the statute of frauds, since a release would result by operation of law.

3. **Same; Note Secured by Mortgage; Modification.**—A note secured by a mortgage on real estate is a contract for the payment of money, and its terms may be modified by a subsequent oral agreement supported by a sufficient consideration.

4. **Contract; Mutuality.**—A contract between a mortgagor and a mortgagee by which a mortgagee agrees to accept payment of the mortgage debt

in shares of stock, is not void for want of mutuality because it does not bind the mortgagor to procure such shares of stock, if the mortgagor actually procured the stock and tenders delivery thereof.

APPEAL from Elmore Circuit Court.

Heard before Hon. W. W. WHITESIDE.

Bill by J. R. Stewart and another against J. C. McKenzie to specifically perform a contract and satisfy a mortgage record. From a decree overruling defendant's demurrer to the bill, he appeals. Affirmed.

The bill shows that respondent, McKenzie, held a mortgage on certain lands of complainant Stewart, to secure Stewart's note upon which was due a balance of $1,500. McKenzie agreed with Stewart that, if Stewart would sell part of said land to complainant Storrs for 30 shares of stock in the Tallassee Oil & Fertilizer Company, McKenzie would accept 15 of said shares in full settlement and satisfaction of said mortgage indebtedness. Upon inquiry by Storrs as to this agreement McKenzie informed Storrs that he had so agreed with Stewart, and told Storrs to accept a deed from Stewart, and that he (McKenzie) would accept the 15 shares of said stock in full payment and satisfaction of the mortgage indebtedness, and would thereupon cancel the mortgage. Storrs thereupon consummated his purchase of the land from Stewart, received a deed, and delivered to Stewart 30 shares of such stock of the par value of $3,000, and received possession of the land. Thereupon Stewart tendered to McKenzie 15 shares of the stock in full settlement of the mortgage indebtedness, and requested that the mortgage be canceled and delivered up, but McKenzie refused to accept the stock, and to cancel and deliver up the mortgage, and still refuses to do so. Complainant Stewart is, and has been, able, ready, and willing to deliver said stock to McKenzie as agreed, and now brings into court for disposition accordingly. Both complainants relied in good faith on respondent's agreement in the premises, but for which they would not have executed their transaction of purchase and sale. Besides the prayer for general relief, it is prayed that J. C. McKenzie specifically perform said agreement to accept 15 shares of stock in said Tallassee Oil & Fertilizer Company, in full payment and satisfaction of said mortgage, and that he be required to enter satisfaction on the margin of the record of the mortgage.

[McKenzie v. Stewart, et al.]

FRANK W. LULL, for appellant. T. G. HILYER, and HOLLEY & MORROW, for appellee.

SOMERVILLE, J.—The bill of complaint in this case is nominally one for the specific performance of the respondent's agreement to accept 15 shares of corporation stock in lieu of $1,500 in money in satisfaction of a mortgage note for that amount. But it is, in substance and effect, a bill for redemption, and we shall so treat it.

(1) If, upon a valid consideration a mortgagee agrees with his mortgagor or his privy, to accept certain property in payment of the mortgage debt, a due and seasonable tender of the property is, of course, the equivalent of a tender of the money originally due. Such an agreement merely arms the mortgagor with an option as to the mode of payment. The real question in this case therefore is: Does the bill of complaint show a valid consideration for respondent's promise to accept the stock in lieu of the money originally due him?

(2) There is obviously no question here involving the statute of frauds, even conceding that the bill shows only a verbal agreement; for there was no agreement with respect to a conveyance of land. It is true that the result of respondent's acceptance of the stock would be the release of the land from the mortgage, but the same result would follow from his acceptance of money also; and in either case the release of the land results incidentally from the operation of law, and not from any agreement of the parties. Had respondent's agreement been to convey the land to Storrs on the consideration stated, the situation would be quite different. The agreement here shown did not change any part of a contract which the statute requires to be in writing, and hence, though merely verbal, it might become binding.—20 Cyc. 287, F; Lehman v. Marshall, 47 Ala. 362, 376; Griswold v. Griswold, 7 Lans. (N. Y.) 72.

(3) The note which this mortgage secured was an ordinary written contract for the payment of money, and, like other ordinary written contracts, its terms could be modified by subsequent parol agreement, if supported by a valid consideration.—Langford v. Cummings, 4 Ala. 46; 9 Cyc. 593, B.

With respect to the consideration for respondent's agreement with complainants, two questions are presented: (1) Did either any benefit move to respondent, or any detriment or dis-

advantage accrue to complainants? and (2) was there mutuality of obligation?

(4) Assuming for the moment the second essential, it is clear that respondent's agreement to accept the stock in payment of Stewart's debt would have been sufficiently supported by Stewart's agreement to procure and deliver the stock to respondent, and also by Storrs' agreement to furnish the stock to Stewart for that purpose. For Stewart would divest himself of a valuable asset, his land, and Storrs would part with a valuable asset, his stock—a manifest disadvantage to each, unless the stipulated part of the stock is to satisfy the debt and remove the incumbrance on the land purchased by Storrs from Stewart. But, it is said, Stewart and Storrs did not bind themselves, the one to supply, and the other to procure and deliver, the stock to respondent for the purpose stated, and hence respondent's agreement to accept it is not binding for want of mutuality of obligation.

(5) The law on this subject is well settled: "Although there is a lack of mutuality in the beginning, this may be cured by the other party subsequently binding himself also by promise or act. Thus, if A, promise B, to pay him a sum of money if he will do a particular act or make a particular promise, and B, does the act, the promise thereupon becomes binding, although B, at the time of the promise does not engage to do the act or make the promise. In the intermediate time the obligation of the promise is suspended, for until the performance of the condition of the promise there is no consideration, and the promise is nudum pactum; but on the performance of the condition by the promisee it is clothed with a valid consideration which relates back to the promise, and it then becomes obligatory. Therefore a contract to pay a certain sum upon the performance of certain acts by another becomes a binding obligation upon the promisor on the performance of said acts before the revocation of the contract, although it express no consideration past or present and contain no promise that such acts shall be performed."—9 Cyc. 334 (V), and cases cited.

It is simply the acceptance of an offer by the performance of the condition stipulated, which then becomes an executed consideration.

It may be that, considered merely as a bill for the specific performance of a verbal agreement of the character shown, the

[Wallace v. F. W. Cook Brew. Co., et al.]

bill of complaint here exhibited would be without equity by rea-son of the adequacy of legal remedies.—*Moses v. Scott*, 84 Ala. 608, 4 South. 742. But the scope of the bill must be determined by its allegations and the object sought to be attained; and, re-garding it, as it patently is, as a bill for redemption of land, it contains equity, and is not subject to any of the grounds of de-murrer assigned. If its allegations are supported by proof, the appropriate relief can be granted under the general prayer.

The decree overruling the demurrer will be affirmed.

Affirmed.

ANDERSON, C. J., and MAYFIELD and THOMAS, JJ., concur.