(85 South. 25)

RAY v. WATKINS et al. (6 Div. 920.)

(Supreme Court of Alabama. Jan. 15, 1920.)

APPEAL AND ERROR ☞987(3)—CHANCELLOR'S FINDINGS TREATED AS JURY VERDICT WHERE HE SAW AND HEARD WITNESSES.

In view of Gen. Acts 1915, p. 705, and page 722, amending Act April 5, 1911 (Laws 1911, p. 198), to amend Code 1907, § 2846, providing that presumptions in favor of correctness of judgment appealed from shall not be indulged, Code 1907, § 5955, subd. 1, providing that no weight shall be given the chancellor's decision upon the facts, but the Supreme Court shall weigh the evidence, must be construed as applying where the judge did not see or hear the witnesses; but where he did, unless plainly erroneous, the findings will be treated like a jury's verdict.

Appeal from Circuit Court, Fayette County; Henry B. Foster, Judge.

Bill by George D. Ray against G. M. Watkins, as executor of the estate of Lizzie Ray, deceased, and others, for specific performance of a contract to convey land. Decree for respondents, and complainant appeals. Affirmed.

The bill alleges that Lizzie Ray executed a bond for title to George D. Ray for certain land, and that the purchase money thereof was paid at a later date and Lizzie Ray executed a deed to complainant; but that in the execution of the deed, which was intended to be a warranted deed, the parties thereto, through ignorance or inadvertence, selected as the justice of the peace one A. D. Ray, to take the acknowledgment to the deed, who was the father of the complainant and grantee in said deed. It is further alleged that Lizzie Ray afterward married G. M. Watkins, and, having died, left a will leaving all of her property to Watkins and naming him as executor. The judge trying the cause found the following facts as a basis for his decree dismissing the bill:

"(1) The complainant's uncle, Alex Ray, at the time he devised the land to Lizzie Ray, then his wife, expressed a request or wish that she should will the land at her death to the complainant, and apparently up to the time of some difference, as shown by the testimony of L. B. Thompson, between Lizzie Ray and complainant, when the latter left the place, both Lizzie Ray and complainant expected the land to go to complainant at Lizzie's death. The undisputed testimony shows that in pursuance of this purpose Lizzie Ray had Mr. J. A. Brown write her will, leaving this land and all her personal property to complainant. But after her marriage to respondent Watkins, Lizzie made another will devising all her real and personal property to her husband.

"(2) Lizzie Ray up to the time of her death was in possession of the land, claiming absolute title to it, and during her life neither she nor complainant ever made mention of his having

executed a deed to complainant, except that complainant claims to have showed it to his brother, Mack Ray. On the contrary, Lizzie inferentially denied ever having made a deed to complainant, when she told L. B. Thompson, in the fall of 1912, after the date of the instruments relied on by complainant, that she was rid of complainant and was glad to get rid of him and it seemed to her that complainant got mad and wanted her to make him a deed for staying there.

"(3) If the bond for title and deed were in fact executed, they were withheld from record, and their existence was kept secret from all except complainant, his father, his brother, and his stepbrother. I have reached this conclusion notwithstanding the testimony of George Gurley, which does not impress me, because it hardly is probable that after a lapse of five or six years this witness would be able to recall the date of a casual call by the house of Lizzie Ray, and, further, because the statement alleged by him to have been made by A. D. Ray, or complainant, is not consistent with their seemingly studied care to keep the existence of that document secret until after the death of the principal obligor, if it in fact was executed. It hardly is probable, in view of their continued reticence to all their friends, that they would have proclaimed the fact to a comparative stranger in that neighborhood.

"(4) With the exception of complainant's alleged disclosure to Mack Ray, his brother, the day of the alleged execution of the deed, complainant did not disclose his claim to having a deed until about three weeks after Mrs. Watkins' death, although the day after her burial he saw defendant Watkins and asked him if he had found among Mrs. Watkins' papers a will or deed to him, and was informed by Watkins that he (Watkins) was claiming the land under Mrs. Watkins' will.

"In these circumstances it requires clear and convincing proof of the execution of the deed and bond for title to satisfy the mind that they were in fact executed, and especially should the proof be free of marks of suspicion. All the witnesses were examined orally before the court, and I thus had opportunity to observe the bearing and demeanor of the witnesses, and in a general way know the personal character of most of the witnesses.

"The alleged bond for title makes no mention of a life estate to be reserved to Lizzie Ray, but calls for the execution of a warranty deed, and, in legal effect, a deed granting the present right of enjoyment, and the consideration expressed in the bond for title is $300, the evidence showing that the property was worth over $2,000. Under this bond for title the complainant had the right to compel the execution of a warranty deed with present right of enjoyment for the sum of $300, and could then eject Mrs. Lizzie Ray (Watkins) from this land, which was substantially all the property she owned. But when the deed is written there is inserted a condition that it is to take effect at the death of Lizzie Ray, and not before. Under the bond for title, if genuine, complainant could have compelled the execution of a deed conveying a present right of possession. If a deed were fabricated for the purpose of making a false claim, the insertion of such a clause might be thought more readily to explain the failure to record the deed and the keeping secret of the claim to the land through a number of years, and until after the death of the alleged grantor.

"The alleged circumstances of the execution of the bond for title are, I am convinced, suspicious. According to the testimony of complainant and his witnesses there just happened to be present as witnesses complainant's father, his brother, and his stepbrother. The complainant testified that the trade between him and Lizzie Ray called for a deed to be executed that morning, and the only reason it was not executed was because his father, being a justice of the peace in Tuscaloosa county, could not take an acknowledgment in Fayette county. Apparently for that reason alone complainant asserts that without any change of the terms of the trade, except as the bond for title changed them, Lizzie Ray gave up her right to present payment of the purchase money and complainant his right to present execution of the deed, and postponed the completion of the transaction for nearly two months. And this occurred although the transaction was in the morning and within a mile of a competent justice of the peace or notary public, to obtain whose services no effort whatever was made. If that justice or notary had been called in, complainant, if he in fact made the trade with Lizzie Ray, would have had a deed executed under circumstances which would have dispelled all suspicion as to the bona fides of the transaction.

"Likewise is the testimony with reference to the execution of the deed. Complainant and Lizzie Ray lived within a mile of a competent justice or notary public of Fayette county. But, instead of having that justice write the deed and take the acknowledgment, complainant says they took a long journey to his father's home in Tuscaloosa county, and, as in the case of the bond for title, the only persons who witnessed the execution of the deed were members of complainant's immediate family. He attempts to explain this by saying that Lizzie Ray would not have anybody but his father make the deed. But the testimony shows that she had a friend, Mr. J. A. Brown, in Berry, to whom she had gone to write the will in which she left her property to complainant. It is a fact of general knowledge that most people, when they do not employ a lawyer, are more solicitous to have a friend in whom they have implicit confidence to make their wills than they are with reference to any other kind of document. So it hardly seems reasonable that, having such a friend within a mile of her residence to whom she could have gone for advice and for the making of the deed, Lizzie Ray, in feeble health, as the testimony shows, should have gone a journey of 15 to 18 miles in winter weather for the purpose of having complainant's father make the deed, for the sole reason that there was no one else whom she would trust to make it for her.

"Complainant's conduct and declarations after the date he claims the deed was executed are wholly inconsistent with his claim to have had a deed since February 2, 1912. J. B. Hogg, a man of good character and a credible witness, testified positively that in the fall of 1912, when complainant was trying to get him to buy the land, he went on it with complainant;

that complainant asked him not to mention anything about his selling the place to Lizzie Ray; that the witness then asked complainant if he had a deed to the land, and complainant replied that he did not have a deed to it, but he could get one for the witness if he bought it. This occurred within less than a year after the date of the deed which complainant offered in evidence, and he could not have forgotten that he had a deed, if in fact he had one.

"J. H. Stone, complainant's pastor, testified that the day after Mrs. Watkins was buried he accompanied complainant to Tuscaloosa, at the latter's request, and to be a witness to whatever might occur, to see Watkins; that complainant asked Watkins if he had found in Lizzie Ray's papers a will or deed to the complainant for this land; that Watkins told him he had not, but that she had left a will giving everything to him (Watkins); that they accompanied Watkins to the office of the probate judge and had the will read over to them, and that complainant, though Watkins asserted ownership under his will, did not then claim to have a deed to the land, but did ask Watkins if he had found a will or deed to complainant for the land.

"J. A. Alexander testified that he went out of town with complainant on his return trip on the day he saw Watkins in Tuscaloosa; that complainant told witness that he had a will to the land and Watkins had a will to it; that he thought he could 'bust' the Watkins will, and as his reasons for thinking he could break the Watkins will stated that his uncle willed the place to Lizzie Ray and told her he wanted complainant to have it at her death, and that if he knew that she would not will complainant the place he himself would will it to him then. Complainant then did not make any assertion he had a deed, but claimed it under a prior will of Lizzie Ray, and discussed the probability of making good his claim to the land by breaking the Watkins will.

"J. B. Wheat testified that he heard a conversation between complainant and Wheat's wife, complainant's sister, some four or five days after Lizzie Watkins' death; that in that conversation complainant told Mrs. Wheat that he had seen the Watkins will and that it was good; that he could not break the will; that in reply to a question by Mrs. Wheat as to what complainant was going to do about it complainant replied that he was going to sue old man Watkins for the money due to him for improvements he made on the place; and that complainant said nothing about having a deed to the place.

"J. A. Brown, who wrote the will in which Lizzie Ray left the property to complainant, testified that shortly after Mrs. Watkins' death complainant went to see him and asked him if he remembered writing such a will and the contents, and that complainant then made no mention of having a deed to the place; that about three weeks afterwards complainant again went to see him and then claimed that he had a deed which Mrs. Watkins delivered to him some time during the summer before she died. This was the summer of 1915, whereas complainant testified that the deed was delivered to him in the winter of 1912.

"The complainant's possession of the bond for title is not very satisfactorily explained. Complainant says he turned it back to Lizzie Ray at the time she delivered the deed, and explains his possession of it on the trial by saying that Lizzie Ray afterwards gave it to him. It appears that Lizzie Ray held on to all papers whether they were important or not, as shown by the testimony of complainant that she kept carefully the old form of bond for title. This habit, it seems, would have led her to keep the $1,500 bond for title which had been delivered back to her as evidence that its conditions had been complied with.

"Lizzie Ray could not read or write. Complainant testified that she kept this old form of bond for title among other papers; that neither he nor his father could write a bond for title; and that Lizzie Ray went to her trunk and got out this form from among other papers and brought it to him to copy, although she could not read or write."

McNeil & Monroe, of Fayette, and Harwood, McKinley, McQueen & Aldridge, of Tuscaloosa, for appellant. Counsel insist, first, that specific performance will be enforced against the executor, that the deed to Ray will be construed as a deed, and not a will, and that, though ineffectual to convey title, it will be construed as a bond for title; but, in view of the opinion, it is not deemed necessary to here set out the authorities cited. They further insist that no weight can be given the finding of the trial court, but that the appellate court must weigh the evidence and render the proper decree, citing section 5955, subd. 1, Code 1907; 127 Ala. 376, 30 South. 555; 133 Ala. 599, 32 South. 495; 172 Ala. 655, 55 South. 293.

Foster, Verner & Rice, of Tuscaloosa, for appellee. Most of the evidence was ore tenus, and the questions presented are of fact, and not of law, and the appellate court will not disturb the decree of the trial court, unless it is manifestly unjust. 199 Ala. 152, 74 South. 62.

THOMAS, J. This decision must rest on a question of fact. As shown by the record, the witnesses were examined orally before the court. The judge had the benefit of observing the manner and general demeanor of the witnesses and the better opportunity to pass upon the credibility of the testimony. His finding has the force of a verdict of a jury. In Andrews v. Gray, 74 South. 62,[1] this court declared that section 5955 of the Code of 1907, subd. 1, providing that on chancery appeal no weight shall be given the chancellor's decision upon the facts, but the Supreme Court shall weigh the evidence, applies only where the judge trying the issue had not the advantage of seeing and hearing the witnesses when giving their testimony orally in open court, under the provisions of the act of September 22, 1915 (Gen. Acts, p. 705). This construction of said statutes was followed in Manchuria S. S. Co. v. Donald & Co., 200 Ala. 638, 77 South. 12; State v. T. J. Mattox Cigar & Tobacco Co.,

[1] 199 Ala. 152.

201 Ala. 229, 77 South. 755, 756; Blair v. Jones, 201 Ala. 293, 78 South. 69; Hess v. Hodges, 201 Ala. 309, 78 South. 85, L. R. A. 1918D, 858; Faulkner v. Fowler, 201 Ala. 685, 79 South. 257; Barton v. Burton Mfg. Co., 202 Ala. 180, 79 South. 664; Hampton v. Counts, 202 Ala. 331, 80 South. 413.

The act approved September 22, 1915, amended an act approved April 5, 1911 (Laws 1911, p. 198) to amend section 2846 of the Code, and was to the effect that a ruling on a motion for a new trial in the circuit court, city court and court of like jurisdiction, county court of law and equity, or probate court, in granting or refusing same, may be reserved for review by a bill of exceptions. Said act contains the further provision that—

"No presumption in favor of the correctness of the judgment of the court appealed from, shall be indulged by the appellate court." Gen. Acts 1915, p. 722.

The effect given by this court to the latter provision of said act, in law and equity cases, is that where the evidence is ore tenus before the trial judge, unless plainly erroneous, the findings of fact will be treated like the verdict of a jury. Andrews v. Grey, supra; Fitzpatrick v. Stringer, 200 Ala. 574, 76 South. 932; Faulkner v. Fowler, supra.

The same rule was held applicable to the reviewing by this court of the facts on which the granting or refusing of a new trial at law was rested. Adams Hdw. Co. v. Wimbish, 201 Ala. 548, 78 South. 902; Caravella Shoe Co. v. Hubbard, 201 Ala. 545, 78 South. 899; Cole v. A. C. S. R. Co., 201 Ala. 193, 77 South. 719; Veid v. Roberts, 200 Ala. 576, 76 South. 934. This rule must obtain where a new trial is granted under like circumstances in equity.

We will not disturb the final decree of the court granting the rehearing. Cobb v. Malone, 92 Ala. 630, 9 South. 738; N. C. & St. L. Ry. Co. v. Crosby, 194 Ala. 338, 70 South. 7.

The decree of the circuit court, in equity, is affirmed.

Affirmed.

ANDERSON, C. J., and McCLELLAN and SOMERVILLE, JJ., concur.