<hr />

(99 South. 109)

## PALMER v. JAMES. (6 Div. 49.)

(Supreme Court of Alabama. Jan. 31, 1924.)

1. Appeal and error ⊜⇒1011(1)—Finding of fact by trial judge on competent evidence not reversed.

Where witnesses were heard by the trial judge viva voce, his finding on conflicting evidence will not be reversed.

2. Chattel mortgages ⊜⇒33—Verbal agreement to execute written mortgage not equitable mortgage.

Under Code 1907, § 4288, inhibiting verbal chattel mortgages, a verbal agreement to execute a written mortgage is not enforceable in equity as an equitable mortgage.

Thomas, Sayre, and Miller, JJ., dissenting.

Appeal from Circuit Court, Walker County; R. L. Blanton, Judge.

Bill in equity by H. C. James against R. G. Palmer, for foreclosure of an equitable lien or mortgage. From a decree for complainant, respondent appeals. Reversed and rendered.

Ray & Cooner, of Jasper, for appellant.

The transaction shows an attempt to create a verbal mortgage, and was void. Barnhill v. Howard, 104 Ala. 412, 16 South. 1; Dickey v. Vaughn, 198 Ala. 283, 73 South. 507; Code 1907, § 4288.

Coleman D. Shepherd, of Jasper, for appellee.

A lien on personal property, enforceable in a court of equity, can be created by oral agreement of the parties. Putman v. Summerlin, 168 Ala. 390, 53 South. 101; Shelburne v. Letsinger, 52 Ala. 96. A verbal agreement to give a mortgage founded on consideration of a debt contracted on the faith of it will be upheld and enforced as a mortgage in equity. Morrow v. Turney's Adm'r, 35 Ala. 131; 6 Cyc. 995; Jackson v. Rutherford, 73 Ala. 155.

<hr />

⊜⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

SOMERVILLE, J. The bill is filed for the foreclosure of an equitable lien or mortgage; the substance of its pertinent allegations being that complainant sold and delivered to respondent a sawmill and sawmill outfit for $500, on the understanding and agreement that complainant was to have a lien thereon as security for the purchase money, and that the property "was to stand good for the purchase price," and that "the title which passed to the defendant * * * was to be subject to said lien and said agreement."

The undisputed evidence—in particular the testimony of complainant himself—is that the only agreement between the parties with respect to security for the purchase money was that, when respondent "got the mill moved over and set up" he would execute to complainant notes and a mortgage on the property for $400. Complainant specifically testified that there was no agreement that the property was to stand good for the purchase money, other than the agreement to execute a mortgage.

It is true that the witnesses Allred and Whitlaw testified that, on the occasion of the sale, the respondent James stated that "his property stood good for his debts," and also that "his property and mill stood good for his indebtedness—all he owed." And complainant himself testified that respondent said, "What I have got stands for my debts." But such general statements could only mean that his property stood liable for all of his debts in the ordinary way, and do not evidence an intent to make a verbal mortgage to secure a specific debt. Nor does it appear that those statements were terms of the sale, nor inducements thereto, for, indeed, the testimony of those witnesses expressly shows the contrary.

There is nothing, in short, to show a reservation of a lien by the vendor, but only his reliance upon the vendee's promise to execute a mortgage security after the mill was set up.

[1] The witnesses were heard by the trial judge viva voce, and we would not reverse his findings of fact on conflicting testimony; but it does not appear that the trial court found that a lien was reserved from the title sold and transferred. On the contrary, we presume that relief was granted on the theory that the agreement to execute a written mortgage was in effect a valid parol mortgage, enforceable in equity. Nor does our own finding on this question involve the credibility of the witnesses, nor any conflict in the testimony.

[2] On these facts, our conclusion in this case must be ruled by the case of Williams v. Davis, 154 Ala. 422, 45 South. 908, from which it is not distinguishable. After referring to section 2151 of the Code of 1896 (now section 4288 of the Code of 1907), the court in that case said:

"It is not conceivable that the transaction between the complainant and the respondent amounted to anything more than a verbal agreement to make a mortgage, void in law and in equity. An agreement not in writing, to make a mortgage, is at most, in equity, a verbal mortgage."

See Morrow v. Turney's Admr., 35 Ala. 131. That a parol mortgage is void and conveys no title, legal or equitable, was declared also in Marlowe v. Rogers, 102 Ala. 510, 515, 14 South. 790.

It results that, on the case made by the evidence, complainant is not entitled to relief.

We are not called on to determine whether, under the principles laid down in Putnam v. Summerlin, 168 Ala. 390, 53 South. 101, the parol reservation of a lien for the purchase money, made at the time of and as part of the sale, would have created a valid and enforceable equitable mortgage, for that question, as above shown, is not presented. We note, however, in passing, that the case of Williams v. Davis, supra, was reviewed in Putnam v. Summerlin, and its correctness was not questioned.

The conclusion to which we are thus constrained may seem regrettable, but the Legislature has seen fit to inhibit verbal mortgages, and courts are bound to give effect to the statute (section 4288 of the Code), regardless of the hardships it may impose.

The decree of the circuit court in equity will be reversed, and a decree will be here rendered denying the relief sought, and dismissing the bill of complaint.

Reversed and rendered.

ANDERSON, C. J., and GARDNER and BOULDIN, JJ., concur.

THOMAS, J. (dissenting). The averments of the lien in the third paragraph of the bill are:

"That in said contract for the sale and purchase of sawmill and machinery, and as a part thereof, it was understood and agreed between complainant and defendant that said complainant was to have a lien upon said sawmill and machinery and outfit as security for the payment of said $500 purchase price, and that said sawmill and sawmill outfit hereinbefore described was to stand good for the purchase price, and that the title which passed to the defendant to said sawmill and sawmill outfit was to be subject to said lien and said agreement that the same should stand good for itself."

Respondent's answer to said paragraph of the bill was:

" * * * That the alleged agreement, as set out in said bill, and particularly as set out in paragraph 3 thereof, wherein it is claimed that the complainant was to have a lien upon the said sawmill and machinery and outfit as security for the payment of the said $500 purchase price, and that said sawmill and sawmill outfit described in said bill was to stand good

for the said purchase price, and that the title which passed to the defendant to the said sawmill and sawmill outfit was to be subject to the said alleged lien, and said alleged agreement that same was to stand good for itself was not in writing as required by law, but was in parol, and that said agreement was and is void under the laws of Alabama, and particularly under section 4288 of the Code of 1907, and under the case of Williams v. Davis, 154 Ala. 422, 45 South. 908, and other cases."

The rights of third parties are not involved in the suit. As between the instant con- 'tracting parties, the lien sought to be en- forced by the bill cannot be sustained for a mechanic's lien under the common law, without the retention of the possession of the property, which was not done. Alexander v. Mobile Auto Co., 200 Ala. 586, 588, 76 South. 944. The possession was required to be sur- rendered to Palmer by the complainant per the terms of their contract, which was done.

The reservation of title, in what are term- ed conditional sales, is more than a lien. The reserved title does not vest in the party con- tracting to purchase until the purchase price is paid. With such a provision in an ex- ecutory contract, the idea of security for debt is incomplete with legal title. Warren v. Liddell, 110 Ala. 232, 243, 20 South. 89; Haynie v. Robertson, 58 Ala. 37; Dowdell v. Empire Fur. & Lbr. Co., 84 Ala. 316, 4 South. 31. The fact that the personal property was to be removed from the lands of the vendor, and to be affixed to the lands of the party contracting to buy would not prevent or de- feat a retention of title, had this been the contract; and the fact that the property was to be set up on the lands of the purchaser and could be removed without material det- riment to the lands would be consistent with a retention of title. Warren v. Liddell, 110 Ala. 232, 20 South. 89. And it has been held that a conditional sale may be created by a verbal agreement, as between the contracting parties. L. & N. R. Co. v. Miller, 209 Ala. 378, 96 South. 322; Gen. Acts 1911, p. 115.

It will be noted by reference to paragraph 3 that the bill was not filed on the theory of a conditional verbal sale—retaining the title to the personal property in the party con- tracting to sell (James) until the purchase price was fully paid by Palmer. And it is shown by the preponderance of the evidence that the mill and outfit was sold and was to stand for the purchase price.

As between the parties, what was the na- ture of this lien created by the verbal con- tract? There can be no verbal mortgage conveying the legal title under the statute. Code 1907, § 4288; Abbeville Live Stock Co. v. Walden, 209 Ala. 315, 96 South. 237. It was not a pledge for the purchase price, since the possession was parted with by the seller. Oden v. Vaughn, 204 Ala. 445, 450, 85 South. 779; Bradford v. Proctor, 209 Ala. 299, 96 South. 203.

In Warvelle on Vendors, vol. 2 (2d Ed.) § 771, p. 914, it is said:

"But whatever may have been the ancient rule, the law at the present time has firmly es- tablished the doctrine that where the labor or money of one person has been expended in the permanent improvement and enrichment of an- other's property under a parol contract or agreement which cannot be enforced because, and only because, it is not in writing, the party repudiating the contract, as he may do, will not be allowed to take and hold the property thus improved and enriched without compensation for the additional value which those improve- ments have conferred upon it; and it rests up- on the broad principle that it is against con- science that one man shall be enriched to the injury and cost of another, induced by his own act."

The reason of the rule of enforcing certain parol contracts partly executed is thus stat- ed by Mr. Story in his work on Equity Juris- prudence, vol. 2 (14th Ed.) § 1045, p. 422:

"In the next place courts of equity will en- force a specific performance of a contract with- in the statute where the parol agreement has been partly carried into execution. The dis- tinct ground upon which courts of equity inter- fere in cases of this sort is that otherwise one party would be enabled to practise a fraud upon the other; and it could never be the intention of the statute to enable any party to commit such a fraud with impunity. Indeed fraud in all cases constitutes an answer to the most solemn acts and conveyances; and the objects of the statute are promoted, instead of being obstruct- ed, by such a jurisdiction for discovery and relief. And where one party has executed his part of the agreement in the confidence that the other party would do the same, it is obvious that if the latter should refuse, it would be a fraud upon the former to suffer this refusal to work to his prejudice."

The author further says, at section 1047, p. 425, of the same volume:

"Part performance is such a situation that one is in, which is a fraud upon him."

Mr. Pomeroy, in his work on Equity Juris- prudence, vol. 3 (4th Ed.) § 1294, p. 3117, as to equitable contracts by representations and acts, says:

"There is, however, a form of contract pecu- liar to equity which is created by representa- tions made by one party, and acts done by the other party upon the faith of such representa- tions. * * * A representation deliberately and intentionally made, for the purpose of in- fluencing the conduct of another, and then acted upon by him, is generally the foundation of a right which a court of equity will enforce, per Lord Cottenham, in Hammersley v. De Biel, 12 Clark & F. 45, 61, note. But in order that the right should be that of contract, the representa- tion must be in some sense promissory—that is, must be something in the future. Represen- tations of facts as existing or past may be the occasions of rights, but the rights will then be referable to fraud or to equitable estoppel, and not to contract. While the law can only

give compensation in damages, equity, as has been shown, will compel the party to make his representations good by specifically performing them. See Bold v. Hutchinson, 20 Beav. 250; 5 De Gex, M. & G. 558; Neville v. Wilkinson, 1 Brown, Ch. 543."

And the rationale of the doctrine of equitable liens is thus stated by the author, at section 1234, p. 2961, of the same volume:

"It follows, therefore, that in a large class of executory contracts, express and implied, which the law regards as creating no property right, nor interest analogous to property, but only a mere personal right and obligation, equity recognizes, in addition to the personal obligation, a peculiar right over the thing concerning which the contract deals, which it calls a 'lien,' and which, though not property, is analogous to property, and by means of which the plaintiff is enabled to follow the identical thing, and to enforce the defendant's obligation by a remedy which operates directly upon that thing. The theory of equitable liens has its ultimate foundation, therefore, in contracts, express or implied, which either deal with or in some manner relate to specific property, such as a tract of land, particular chattels or securities, a certain fund, and the like."

The authorities are collected in 19 R. C. L. pp. 275, 276, § 46, to the effect that—

"An agreement or contract to secure an obligation by a mortgage creates in equity a lien on the property agreed to be mortgaged, and operates as an equitable mortgage according to the maxim that equity regards that as done which ought to be done. * * * It has been held that a mere oral agreement to mortgage land is within the statute of frauds and hence of no weight, but, where the obligee has fully performed his part of the agreement by furnishing the consideration for which the mortgage was to be given, that objection does not lie, and the promise or contract has effect as an equitable mortgage. Accordingly, if one advances money to another to buy a specific tract of land, on his oral promise to secure its repayment by a mortgage on the property when title is obtained, and after a conveyance has been procured by the use of the money the borrower refuses to execute the mortgage, equity will treat the transaction as creating an equitable mortgage."

In the consideration of pronouncements in this jurisdiction, it will be said, of Bradford v. Proctor, supra, that the evidence and writing showed a sale and transfer of the mule as "security" for its purchase price; that a written transfer of title was the subject of consideration in Boyett v. Hahn, 197 Ala. 439, 73 South. 79; Lewis v. Davis, 198 Ala. 81, 73 South. 419; and as security for debt in Ellington v. Charleston, 51 Ala. 166.

In Wood v. Holly Mfg. Co., 100 Ala. 326, 345, 346, 13 South. 948, 951 (46 Am. St. Rep. 56) the court said:

"1. In the opinion of the chancellor (Coleman) it was very pertinently asked, 'Were complainants and Samuel R. Bullock authorized to make the contract of which Exhibit A is a copy; was it a legal contract, and did it give complainants a lien upon the engines and connections as a security for the payment of the whole debt secured?' Answering, it was said, 'There can be no question of this. They were the absolute owners of the property, the subject of contract, were under no disabilities to make it, and were authorized and capable of making such terms and provisions as they saw proper. If this suit, was between complainants and Bullock & Co. only, there would be no room for controversy. Can Samuel R. Bullock & Co. by any voluntary act on their part, amend and destroy the security thus given without the consent of the other party, or without some fault or negligence of the other?'

"Let us treat the case, for the time, therefore, as if it were between complainant and Bullock & Co., only, and the rights of intervening third parties become of easier solution.

"2. The contract expressly reserved a lien on the engine, pumps, and connections with the privilege of possession. The character of this lien has been the subject of much discussion, and is well settled in the books. There is but a narrow distinction, so far as the security of the debt and its enforcement in a court of equity goes, between a mortgage, as such, and what is denominated simply an equitable lien or mortgage. A lien to be of the former class must arise where the possession remains with the debtor [we interpolate mortgagee]. * * * The court adds [in Jackson v. Rutherford, 73 Ala. 157]. 'In some of our decisions expressions are used which seem to confound the distinction between legal and equitable mortgages, but there is no case in our reports which really conflicts with the principles declared in this decision.'

"Again it was said in Kyle v. Bellinger, 79 Ala. 516, 521, that 'A lien created by contract, and not sufficient as a legal mortgage, will generally be regarded as in the nature of an equitable mortgage. The form of the contract is immaterial. Though a lien may not be expressed in terms, equity will imply a security from the nature of the transaction, and give it effect as such, in furtherance of the agreement of the parties, if there appears an intention to create a security. Says Judge Story. "If the transaction resolves itself into a security, whatever may be its form, it is in equity a mortgage." Neither is any particular form of words necessary to the reservation of a lien. Any words which manifest an intention to retain one, will be sufficient in a court of equity.' "

In the last-named case, a writing defined the terms of the contract as to constructing a waterworks. The nature of the lien was declared and enforced in equity.

In Town of Camden v. Fairbanks, Morse & Co., 204 Ala. 112, 86 South. 8, four justices concurred on the point that there was a written proposition made to and accepted by the municipality that retained title to the personal property to be furnished; yet Mr. Justice McClellan thought there was an adequate remedy at law to retake the property. Justices Sayre, Somerville, and Gardner and the writer agreed that an adequate remedy at law did not exist, and that a lien could be enforced on the machinery installed as

a pumping station for the waterworks of the town of Camden, on the theory so well stated by Mr. Chief Justice McClellan in Ross v. Perry, 105 Ala. 533, 537, 16 South. 915, 917:

"Here then we have title in complainants to lumber which was sold by them to the defendant, Charles Perry, to be used by him in the erection of this house, which was so used, and which now constitutes a part of said house. Ross & Co. could not maintain detinue for the lumber, because it has been attached to and has become a part of defendant's realty. Nor could they maintain trover for there has been no conversion of the lumber by the defendant. it has been used and applied by him according to the terms of the sale of it to him. They never had a materialman's lien under the statute, because they never parted with the title to the property. Ross & Co. thus retaining title, and thus cutting themselves off from all remedies at law as for conversion of their property and for its recovery in specie and to subject it under the mechanics' and materialmen's statutes, must be held—and such was the manifest contemplation and intention of the parties—to have so retained the title as a security for the payment of the price the defendant Charles Perry agreed to pay them for it. That clear intent and meaning of the contract can only be effectuated, no force can be given to the contract except, by holding that this title in Ross & Co. to the lumber, with which in great part the house was constructed, was intended to constitute and did constitute an equitable lien or mortgage in their favor upon the house itself, and, of course, upon the lot of land upon which it is situated. The contract itself, taken with the fact that the lumber was in fact used according to its terms in building the house, evidences every element of an equitable mortgage, and it can be so declared and enforced in this case under averments of the bill and the prayer for general relief."

After the foregoing, it is perhaps unnecessary to prolong the discussion with other authorities.

In Newlin, Fernley & Co. v. McAfee, 64 Ala. 357, 364, 365, Mr. Chief Justice Brickell declared:

"The first question arising in the case is, whether the complainants have an equitable lien, or right, or claim, on the lands described in the agreement made by them with McAfee, which a court of equity will enforce. Upon that question, we cannot entertain a doubt, when the agreement is read in the light of the circumstances surrounding the parties at the time it was made. The form of the agreement is not material; operative words of conveyance are not essential to the creation of a charge, or trust, which a court of equity will enforce as as a mortgage. It is the intention of the parties to charge particular property, rights of property or credits, with the payment of debts, which the court will regard. When that intention is deducible from their agreement, the court will give effect to it, and the equity created will prevail against all others than innocent purchasers for value."

In Butts v. Broughton, 72 Ala. 294, 298, Mr. Justice Somerville said:

"A bill to redeem a mortgage may be filed by any one who owns the mortgagor's equity of redemption, or any subsisting interest in it, by privity of title with him, whether by purchase, inheritance, or otherwise. This principle would embrace, not only heirs of the mortgagor, but also his widow who had joined with him in the mortgage, so as to have released her dower. * * * The express declaration is made in them [the notes], that they shall be 'covered by,' or 'subject to' the prior mortgage; and this sufficiently evinced the intention of the maker to create an equitable lien, or mortgage, on the premises in question. In such cases, the form or language of the instrument is not material, except as an index of the intention of the parties. If it was intended as a security for a valid debt, and this is deducible from the instrument itself, it must be construed to be an equitable mortgage."

And in Powell v. Jones, 72 Ala. 392, the bill in equity was to enforce a lien or charge on a common fund, for accounting and distribution; and it was said:

"An agreement that a debt shall be paid out of the proceeds of certain property, or that the property shall be bound for the debt, has been usually construed to create an equitable mortgage. Miller on Equitable Mortgages, 3; Jones' Chat. Mortg. § 13; Donald v. Hewitt, 33 Ala. 534, 548, 73 Am. Dec. 431; Butts v. Broughton, at present term (ante, page 294) [72 Ala. 294]; Newlin v. McAfee, 64 Ala. 357; 1 Jones' Mortg. §§ 166, 167; Jackson, Morris & Co. v. Rutherford, at present term [73 Ala. 155]."

The old definition of equitable lien or mortgage by Mr. Justice Walker, in Donald v. Hewitt (1859) 33 Ala. 534, 548, 549, 73 Am. Dec. 431, is:

"Every agreement for a lien or charge in rem constitutes a trust, and is accordingly governed by the general doctrine of trusts. Such a lien or charge is called an equitable mortgage, because courts of chancery, regarding them as trusts to be enforced, attach to them the incidents of a mortgage. Thus, an agreement that bills should be paid out of the proceeds of certain property has been held to create an equitable mortgage. Miller on Equitable Mortgages, 3. An agreement, 'pledging and hypothecating' property for the payment of certain bills, was enforced as an equitable mortgage. Fletcher v. Morey, 2 Story, 555. A contract that a party 'should have and maintain a lien' on chattels was characterized as 'in the nature of an equitable mortgage,' and as such enforced. Dunning v. Stearns, 9 Barb. 630."

And the doctrine of equitable lien is recognized in Kyle v. Bellenger, 79 Ala. 516. In Hall v. M. & M. Ry. Co., 58 Ala. 10, 22, the court said:

" * * * It appears to us that by the provisions of his sale Perry acquired an equitable mortgage.

"In the new and valuable work of Jones on Mortgages, it is said: · 'There are as many kinds of equitable mortgages, as there are varieties of ways in which parties may contract for security, by pledging some interest in lands. Whatever the form of the contract may be, if it is intended thereby to create a security, it is an equitable mortgage;' that is, of course, if it is not a legal mortgage. Section 162."

The case of Lewis v. Davis, 198 Ala. 81, 85, 73 South. 419, 421, quotes approvingly from Pomeroy (3 Pom. Eq. Jur. § 1237) as follows:

"The form or particular nature of an agreement which shall create a ·lien is not very material, for equity looks at the final intent and purpose rather than the form; and if the intent appear to give, or to charge, or to pledge the property, real or personal, as a security for an obligation, and the property is so described that principal things intended to be given or charged can be sufficiently identified, the lien follows."

The case of Williams v. Davis, 154 Ala. 422, 45 South. 908, set out in respondent's plea and answer, was distinguished in Putnam v. Summerlin, 168 Ala. 390, 395, 53 South. 101. In the latter case the bill was to enforce an equitable mortgage, founded on a written agreement for the sale of "lands and personal property"; and it was held that section 4288 of the Code of 1907 had no application to an equitable lien or mortgage on personal property. The discussion is concluded in the original opinion as follows:

"The principle upon which, in cases like this, an equitable mortgage has been declared on .lands, is not that there was a verbal contract ·for such mortgage, but because the vendee received his title to the land coupled with the provision for the lien, and it would be inequitable to allow him to hold under the conveyance and repudiate its conditions. The same principle applies to personal property, and the statute does not abrogate it."

The subject was further considered at some length on rehearing, the cases reviewed and distinguished, and the announcement made as we have just indicated. This interpretation of the "verbal mortgage" statute has not been departed from. There is some analogy contained in W. T. Rawleigh Co. v. Timmerman, 205 Ala. 233, 235, 87 South. 372; Irvin v. Irvin, 207 Ala. 493, 93 South. 517; Interstate L. Co. v. Duke, 183 Ala. 484, 492, 62 South. 845; Bradford v. Proctor, 209 Ala. 299, 96 South. 203. Such equitable title will not support an action of detinue; hence, there was no adequate remedy at law. Hicks v. Meadows, 193 Ala. 246, 257, 69 South. 432; Dickey v. Vaughn, 198 Ala. 283, 73 South. 507; Butler-Kyser Mfg. Co. v. Cent. of Ga. Ry. Co., 190 Ala. 646, 67 South. 393; Abbeville Live Stock Co.· v. Walden, 209 Ala. 315, 96 South. 237.

.In the cases of Barnhill v. Howard, 104 Ala. 412, 16 South. 1; Dickey v. Vaughn, 198 Ala. 283, 73 South. 507; Bradford v. Proctor, 209 Ala. 299, 96 South. 203; and Abbeville Live Stock Co. v. Walden, 209 Ala. 315, 96 South. 237, the discussion was of the legal title not supporting an action of. detinue; and the sufficiency of an equitable mortgage and its establishment and enforcement in a court of equity was not the question for decision. The establishment of the equitable mortgage was the remedy invoked in Putnam v. Summerlin, 168 Ala. 390, 53 South. 101, and in that case the averments in the bill appear to have been that a vendor's lien was reserved and retained as a part of the purchase price of the property conveyed. In Bradford v. Proctor, supra, a writing that amounted to a vendor's lien enforceable· in equity was considered, and held not sufficient to support an action of detinue. And in Abbeville Live Stock Co. v. Walden, supra, the action was detinue for a mule where the purchase price was secured by mortgage, the terms of which (as to permission of the mortgagor to sell the mule) were varied by parol—held, the writing did not prevent a release of the security by parol. In Barnhill v. Howard, 104 Ala. 412, 417, 16 South. 1, the suit was detinue, and the court was merely saying that such lien was not sufficient to defeat an action of detinue for the property unlawfully taken from the vendee's possession by the vendor, and there was no conveyance reserving the lien. Putnam v. Summerlin, 168 Ala. 390, 396, 53 South. 101. The case of Kyle v. Bellenger, 79 Ala. 516, merely presented a question of variance in allegata et probata.

In the case of Williams v. Davis, 154 Ala. 422, 425, 45 South. 908, the effort was to enforce a parol agreement to execute a mortgage; and the same effort was also made and denied in Brown v. E. Van Winkle Gin & Machine Works, 141 Ala. 580, 586, 39 South. 243, 6 L. R. A. (N. S.) 585, on the ground that there was an adequate common-law remedy to collect the purchase price.

The case of Dickey v. Vaughn, 198 Ala. 283, 73 South. 507, was not intended to modify or overrule Putnam v. Summerlin, 168 Ala. 390, 53 South. 101. The latter case is cited. and the justice was merely reciting the plaintiff's insistence in the beginning of ·the opinion. The holding was:

"An oral agreement for the exchange of cows, whereby one of the parties was to receive cash 'boot,' the same to be a lien on the cow traded was an attempt to create a verbal mortgage and void under section 4288, Code 1907.

"Where A. and B. traded cows under an agreement that A. was to pay $5 'boot' money which was to be a lien on the cow until paid the purchase by D. of B.'s interest in the cow did not give D. any right or title to the cow as B.'s successor as a mortgagee that would sustain an action of detinue."

There was no error in overruling demurrer to the bill and ignoring the plea incorporated in the amended answer.

The respondent, testifying in his own behalf, said that the complainant was to remove the mill from the latter's land to the place indicated by respondent, and "was to be put down in good fix." His unqualified statement to that phase of the agreement was:

"Q. Mr. Palmer, what purchase price was agreed upon for this property that Mr. James sold you? A. $500.

"Q. Was it or not a part of the contract that Mr. James was to move the property and set it up in operation? A. Yes, sir.

"Q. Was it the understanding between you that it would take about $100 to move it and set it up? A. Yes, sir.

"Q. Was it or not a part of the contract that he would put the mill in good operation and that he would supply any parts that were necessary to put it in good operation? A. Yes, sir."

Thus by his own testimony respondent's defense was brought within the influence of the contrary result announced in Town of Camden v. Fairbanks, Morse & Co., 204 Ala. 112, 86 South. 8; and indicated that the lien may be enforced on the mill and machinery described in the bill, though it be "set up" or "put down" on respondent's land, or land, indicated to complainant by respondent.

The testimony was taken ore tenus before the judge rendering the decree, and on a consideration of the evidence and under the presumptions obtaining we are convinced that said decree should not be disturbed. Ray v. Watkins, 203 Ala. 683, 85 South. 25; Andrews v. Gray, 199 Ala. 152, 74 South. 62; Gray v. Handy, 204 Ala. 559, 86 South. 548.

The phase of the evidence emphasized by the majority—that respondent agreed to secure the purchase price by a mortgage on the property—supports the decree, in view of the fact that on the trial the insolvency of respondent is shown, and that after the mill and outfit were removed and set up it was claimed by respondent as exempt from the payment of debts. Conceding, for the sake of the discussion, the correctness of the position taken by the majority—that the contract obligated respondent to execute a mortgage on the property when removed and "set up"—it can be enforced by a court of equity, for the trial was had on the fact that the remedy at law was not adequate.

The proof showed respondent's insolvency, and under this phase of the evidence and the general prayer (the lack of the averment of insolvency in the bill was not fatal to recovery), under the rule declared in Jackson v. Vaughn, 204 Ala. 543, 86 South. 469, and Best Park & Amusement Co. v. Rollins, 192 Ala. 534, 68 South. 417, Ann. Cas. 1917D, 929, and this evidence, there was no adequate remedy at law; that is to say, if there had been no evidence other than that adverted to in the opinion—that tending to show a contract to execute a mortgage—the remedy at law was not complete, by reason of respondent's insolvency, and when the contract (if such it was) to give security was broken, the equitable ground existed. Though the bill did not state the injury could not be adequately compensated in damages on the trial, that fact was shown without contradiction. Respondent's theory of the contract affected the realty in setting up the mill thereon. Brown v. E. Van Winkle Gin & Machine Works, 141 Ala. 580, 39 South. 243, 6 L. R. A. (N. S.) 585. Such a case is especially of equitable cognizance, not only because the contract affects the mill, etc., set up on the realty, but because the agreement for security ipso facto shows that plaintiff was unwilling to trust defendant's personal responsibility, and "to deprive him of the security bargained for is to leave him to a remedy to which he was unwilling to trust," and to which, by all of complainant's evidence, he did not trust. Dean v. Anderson, 34 N. J. Eq. 496.

The theory on which relief was denied in Brown v. E. Van Winkle Gin & Machine Works, supra, was that specific performance of a contract to secure a debt by mortgage was "not a matter of course," but was dependent on facts calling for equitable interposition, and the fact on which relief was denied was the failure to show such ground, as the insolvency of the respondent. The mortgage, if made, was overdue, and so the bill was nothing more than a bill to collect a debt; hence the adverse decree in that case. The Brown Case, supra, is reported in 6 L. R. A. (N. S.) 585, where, in copious notes, this subject is given full consideration. See note on page 585, as to real estate; notes on pages 588, 595, 598, as to chattel mortgages.

When thus understood, Brown v. E. Van Winkle Gin & Machine Works, supra, under the phase of the evidence indicated in the opinion of the majority, should have sustained the decree of the circuit court in equity in the instant case.

Under the rule declared by this court in Andrews v. Gray, 199 Ala. 152, 74 South. 62; Ray v. Watkins, 203 Ala. 683, 85 South. 25; Gray v. Handy, 204 Ala. 559, 86 South. 548; Hackett v. Cash, 196 Ala. 403, 72 South. 52; and Finney v. Studebaker Corporation, 196 Ala. 422, 72 South. 54, the decree of the circuit court should be affirmed. The trial court saw and heard the witnesses, and there was ample evidence to support the decree.

The testimony of the disinterested witness Whitlaw, who was present and heard the contract for the mill and outfit, supports the view we first presented and the affirmance of the decree.

The foregoing is concurred in by Mr. Justice MILLER.

Mr. Justice SAYRE agrees to the result the writer has announced.