145 So. 427

### GRAYSON v. GEORGE et al.
### 6 Div. 113.

Supreme Court of Alabama.
Oct. 13, 1932.

Rehearing Denied Jan. 27, 1933.

Cabaniss & Johnston, of Birmingham, for appellant.

Judge & Nesmith, of Birmingham, for appellees.

THOMAS, J.

The suit was to enforce a mechanic's lien for building materials furnished and used in the construction of a house on the lot in question. The respective mortgagees were made parties and maintained their priorities or superior liens to that of complainant. The respondent Independent Brokerage Company answered as a subsequent purchaser (from mortgagor-owner) as of date of March 13, 1931, subsequent to the completion of the building.

The issues of fact were limited by agreement of counsel, as to the amount of the balance due and unpaid for such materials so purchased, furnished, and used in said building; that statutory notice was given and duly filed; that complainant was entitled to a lien on the property, "subject, of course, to the rights, if any, of respondent, Independent Brokerage Company."

It was also agreed that complainant's lien was subordinate to the mortgages of respondents Mortgage Bond Company of New York and Mountain Brook Estates, Inc. That is to say, the trial was had as between C. H. Grayson doing business as Grayson Lumber Company, complainant, and Independent Brokerage Company on the question of a release or waiver of lien which the latter claimed and urged was given by Grayson. The release referred to was a printed form drawn up by the Mortgage Bond Company of New York and used in its interest by its correspondent at Birmingham.

The respondent George, as a witness for complainant, testified he was the owner of the property in question at the time of contracts and construction; that he in person constructed that improvement, bought the materials employed therein. He was asked and answered as follows:

"Q. Are you acquainted with a release— well, this release here, which has been marked Exhibit A, and which has been introduced in evidence?

"'Exhibit A.

"'Loan Number 1725

"'Mr. Frank B. Clark, Correspondent, The Mortgage Bond Company of New York. 727-728 First National Bank Building, Birmingham, Alabama.

"'Dear Mr. Clark: Upon payment of the amount set out opposite our names below, which is the total amount due us in full for building material or labor which we certify that we have furnished on the property described below, we will release Estate #271 Mountain Brook Estates from all claims whatsoever, that we the undersigned may now or hereafter have against this property on account of building material or labor furnished for the erection of improvements thereon.

"'It is understood that The Mortgage Bond Co. of New York has agreed to make a loan to the said F. C. George on said property above described and this statement is made so that The Mortgage Bond Co. of New York and The Mountain Brook Land Co. may be assured that upon payment to us of amounts set opposite our names said property will be free of any claims we have or may have against it whatsoever.

"'Very truly yours:

"'Note: (This release will have to be signed by the company furnishing material and its duly authorized officer showing his title. If the material bill has been paid get the company by its proper officer to mark release, under the item paid, "Paid in full." If same firm has furnished more than one item of material have firm state so under the item and state whether or not if it is included in unpaid amount opposite another item.)

| Material Furnished | Name of Company and Its Officer | Amount Due |
|---|---|---|
| 1. Lumber | Grayson Lumber Co. by C. H. Grayson | $3000.00 |

"A. Yes, sir, that is the one I took to Mr. Grayson.

"Q. Now, Mr. George, for what amount of materials was that release given at the time Mr. Grayson executed it? A. Three thousand and fifty dollars.

"Q. Now, you got those materials, I believe, and used them in the building? A. Yes, sir.

"Q. And that amount of three thousand and fifty dollars was actually paid? A. Yes, sir."

That release contained the names of other materialmen as to the work to be done and the material to be furnished for the respective amounts indicated by each.

The witness was then asked whether, after the materials were used and paid for, if he ordered additional materials from the Grayson Lumber Company to go into said building. He answered that he purchased some material from complainant of date of October 28, 1930, October 30 and March 25, 1930, after the payment of $3,050, and that the amount of the subsequent or additional material was $257.71, after the foregoing release was given and executed.

The itemized accounts of complainant were before the court. The witness further testified that there was no other further additional or "outside agreement" made between complainant and said respondent as to additional materials for said building.

The cross-examination of that witness was to the effect that, when he was negotiating the sale of the property with respondent Independent Brokerage Company, he had conversation with Mr. Grayson, telling him of the sale; that there was not quite enough money to pay him "all the balance," but he would give him same "when we closed the deal"; and Grayson said: "I don't want to interfere with the sale of the house." Witness continued: "I can't remember the exact conversation, but I remember practically what was said; I don't remember the exact words, but to the effect if I didn't have quite enough and couldn't pay it all, of course, he would not want to stop the sale of the house, I had some other houses." The witness testified he had other buildings in which materials furnished by him were used; that he was speaking of the balance of $257.71, saying: " 'We will just have to let that ride awhile,' and asked me if I couldn't pay that later; and I told him I saw no reason why I couldn't, that I had two other houses, that I really had some good prospects for them, to sell them at that time and that I hoped to get enough to pay it a little later, and he said that would be all right, to pay it later on."

The witness Patterson for respondent Brokerage Company testified that he was informed by the owner George that Grayson had been paid the $3,050, and that he would hold personal obligation for the balance; that "the Independent Brokerage Company received a notice of some lien being filed, and I called Mr. George to my office, and I said: 'Mr. George, the Independent Brokerage Company seem to have a lien or something claimed by the Grayson Lumber Company, and you told me this was all cleared up.' He said: 'It is, Mr. Patterson, as far as the property is concerned.' I said: 'You go and get that straightened out.' He said Mr. Grayson had agreed that would go against him as open account because he owed on some lumber and material on other properties. * * * I called Mr. Grayson, of the Grayson Lumber Company, and talked to Mr. Grayson. I said: 'Mr. Grayson, Mr. George came back and told me that was all cleared up.' Well, he said: 'George is honest, and I am trying to get that money out of George.' He said: 'I don't want to give the Independent Brokerage Company any trouble.' "

The witness Grayson testified as to this:

"Q. Now, Mr. Grayson, Mr. George testified before the Court that on or about March 27th, 1931, he sold this property in dispute here to Mr. Patterson's Company, that he went around to you and told you that he wouldn't have money enough to pay you in full, and that with your agreement and consent he paid you part of the account and that you agreed to carry the balance of the amount under open contract, thereby waiving the lien. I will ask you whether or not you had any such agreement with Mr. George? A. No, sir, I did not."

"Q. Who was Morgan-Dean? A. They were selling the house for George, selling it to Patterson or the Independent Brokerage Company. Mr. Dean wanted me to take stock in the Independent Brokerage Company for the entire balance, and I told him I couldn't do it, and he talked to me at length about it, and I refused him. Later, he called me again and talked to me about it, and I finally agreed to take fifty dollars worth of stock, and he insisted on me taking more, and I refused to do it. Later on, I decided I would take a hundred dollars, in order to help them out, but one hundred dollars was what the final agreement was, and my agreement with Mr. Dean was that he was to bring me a hundred dollars worth of Bankers Mortgage stock, and as far as I understood the balance was to be in cash. The trade was closed without any further knowledge of mine, and after it was closed Mr. George brought me out a hundred dollars worth of Bankers Mortgage stock, but he didn't bring any cash. I asked him about the cash at that time, and he said: 'Well, I can't bring it to you until I can sell some of this Bankers Mortgage Bond stock,' and he said he had quite a bit of stock; I don't recall how much, but as well as I recall, two or three thousand dollars worth of stock, and he said as soon as he could sell

them he would pay the balance on this March account.

"Q. Two or three days after George brought you that hundred dollars worth of stock and failed to bring you the balance of the account, did you write Mr. Patterson about the matter? A. Yes, sir."

The letter in question read:

"April 1st, 1931.

"Mr. W. G. Patterson, Montevallo Road, Mt. Brooks, Birmingham, Alabama.

"Dear Sir: We are informed that you have purchased the house on Lot 271, Montevallo Rd. Mt. Brook, from Mr. F. C. George.

"This being the case, we wish to advise that there is an unpaid balance of $257.71 for materials furnished by us to Mr. George for the erection and completion of this house.

"We claim a lien on this property in the above amount and according to the Alabama Statute we will be forced to file our claim within the next three weeks to protect our interests, as much as we regret to do so.

"We suggest that you get in touch with Mr. George at an early date and see that this account is taken care of in due time to avoid placing a lien on this property.

"Thanking you for your kind attention to the matter,

"Yours very truly,

"Grayson Lumber Company,

"THR:v.                    By:————."

The decree and finding of the trial court sitting in equity and hearing ore tenus will not be set aside, unless it is contrary to the great weight of the evidence, and plainly erroneous and manifestly wrong and unjust. The rule announced in Hackett v. Cash, 196 Ala. 403, 72 So. 52, Bookmiller v. Jones, 216 Ala. 298, 113 So. 32, and Grant v. Henderson-Pierce Motor Co., 21 Ala. App. 285, 107 So. 724, at law, is extended and has been applied to such trials in equity. Andrews v. Grey, 199 Ala. 152, 74 So. 62; Ray v. Watkins, 203 Ala. 683, 85 So. 25; Hodge v. Joy, 207 Ala. 198, 92 So. 171; Nixon & Phillips v. Grant, 220 Ala. 84, 124 So. 216; De Freese v. Vanderford et ux., 220 Ala. 361, 125 So. 228; Southern Rwy. Co. v. Clark, 220 Ala. 555, 126 So. 855; Treadaway v. Hamilton, 221 Ala. 479, 129 So. 55; Green. Supt. of Banks, v. Taylor, 222 Ala. 402, 133 So. 7; Cooke v. Wilbanks, 223 Ala. 312, 135 So. 435.

We have carefully examined the evidence and concur in the result announced by the decree—that there was waiver by mutual assent of the mechanic's lien as to the balance in question; and that, after the waiver and action by Patterson and his company, complainant may not maintain and enforce his statutory lien to respondents' prejudice. Green v. Williams, 92 Tenn. 220, 21 S. W. 520, 19 L. R. A. 478; Ivy v. Hood, 202 Ala. 121,

79 So. 587; McKenzie v. Stewart, 196 Ala. 241, 72 So. 109. Moreover, the evidence tends to show or support the reasonable inference that George, at the time of waiver by Grayson, delivered to him the stock of the Bankers Mortgage Bond Company. We will not disturb the decree of the trial court.

Affirmed.

ANDERSON, C. J., and BROWN and KNIGHT, JJ., concur.